IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Craig B. Shaffer**

Civil Action No. 05-cv-01179-PSF-CBS

ROY ALLEN GREEN,

      Plaintiff,

v.

J. YORK, S.I.S. Technician, and
ROBERT HOOD, ExWarden,

      Defendants.

_____

### ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Craig B. Shaffer**

      The matter before the court is Defendant York's[1] Motion to Dismiss [#28], filed

October 18, 2005.  Plaintiff filed a Response [#46] on December 14, 2005.   A

Memorandum [#29], filed October 27, 2005, referred the Motion to Dismiss to the

Magistrate Judge for review.  The court has reviewed the Motion to Dismiss, the

Response, the exhibits, the entire case file, and the applicable law and is sufficiently

advised in the premises.  For the reasons discussed below, it is recommended this

court find and conclude that the Motion to Dismiss be granted and that Defendant York

be dropped from this action.  Further, it is ordered that Plaintiff show cause why this

action should not be dismissed for failure to prosecute with respect to Defendant Hood.

---

[1] Only Defendant York has been served or waived service.  Defendant Hood states that he
will file a separate, responsive pleading if and when he is served.

**I.      Background.**

Plaintiff filed an amended complaint under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971), alleging that his free speech and due process rights were violated by the United States Bureau of Prisons (BOP) staff.  Plaintiff claims that Defendant York violated his right to freedom of speech guaranteed under the First  Amendment to the U.S. Constitution by refusing to mail letters that were critical of prison officials to Plaintiff's family and friends.  Specifically, Plaintiff claims that Defendant York on September 17, November 9, and November 19, 2004, rejected outgoing letters to his brother Bob Basinger and a friend Jackie Jensen, claiming that such letters were insolent towards prisons staff or government employees/officials.  Allegedly, this refusal was done without due process of law, which Plaintiff claims violates his Fourteenth Amendment rights.[2]

Plaintiff's Amended Complaint references an incident report issued to him.  The incident report shows that on September 17, 2004, Defendant York issued an incident report to Plaintiff for insolence towards a staff member.  The basis for the report was Plaintiff's statements in outgoing letter to his friend Bob Basinger in which Plaintiff states about a female staff member at the ADX that "they got this one ugly little lesbian who reads all my mail and she don't care for me at all."  Plaintiff further stated that this staff member's mother "moved to Mexico and died giving head to a huge donkey in a

---

[2]  Construing Plaintiff's complaint liberally, the court construes this claim as a violation of his Fifth Amendment rights, as opposed to his Fourteenth Amendment rights, as this action is brought not against a state but federal prison officials.

live sex show, so she became a man hating lesbian."  Although Plaintiff was originally

slated to be disciplined for "insolence towards a staff member," the discipline was

expunged by the Unit Discipline Committee.  Plaintiff was allowed to send his letter

after removing the offending remarks.

## II.    Standard of Review.

Since Plaintiff appears *pro se,* this court will construe liberally his pleadings and

other papers, holding them to a less stringent standard than formal papers filed by

attorneys.  ***Hall v. Bellmon,*** 935 F.2d 1106, 1110 (10th Cir. 1991).  Defendant moves to

dismiss pursuant to **FED. R. CIV. P. 12(b)(6),** which states that a court may dismiss a

complaint for "failure to state a claim upon which relief can be granted."  **FED. R. CIV. P.**

**12(b)(6).**  When reviewing a **Rule 12(b)(6)** motion to dismiss, the court accepts the

well-pleaded allegations of the complaint as true and construes them in the light most

favorable to the plaintiff.  ***Ramirez v. Dept. of Corrections,*** 222 F.3d 1238, 1240 (10th

Cir. 2000) (citation omitted).  The court should not dismiss a complaint under **Rule 12**

**(b)(6)** "unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." ***Ramirez,*** 222 F.3d at 1240

(quoting ***Conley v. Gibson,*** 355 U.S. 41, 45-46 (1957)).

Alternatively, Defendant moves to dismiss for lack of jurisdiction pursuant to **FED.**

**R. CIV. P. 12(b)(1).**  ***Fritz,*** 223 F. Supp. 2d at 1199-1203.  **FED. R. CIV. P. 12(b)(1)** attacks

the existence of jurisdiction rather than the allegations of the complaint.  Dismissal of an

action is appropriate when the court lacks subject matter jurisdiction over the action.

**FED. R. CIV. P. 12(b)(1)**.  A party challenging a federal court's jurisdiction need not

3

accept the factual allegations of the complaint as true.  Instead, a "party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Stuart v. Colorado Interstate Gas Co.,* 271 F.3d 1221, 1225 (10th Cir. 2001); *Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kominat,* 244 F. Supp. 2d 1130, 1136 (D. Colo. 2002).  A court reviewing its jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Pringle v. United States,* 208 F.3d 1220, 1222 (10th Cir. 2000); *Holt v. U.S.,* 46 F.3d 1000, 1003 (10th Cir. 1995). Consideration of matters outside of the pleadings pursuant to FED. R. CIV. P. 12(b)(1) does not convert the motion to a motion for summary judgment pursuant to FED. R. CIV. P. 56.  *Stuart,* 271 F.3d at 1225.

## III.   Analysis.

Defendant York moves to dismiss pursuant to FED. R. CIV. P. 12(b)(6) all Plaintiff's claims due to Plaintiff's failure to exhaust administrative remedies prior to filing his Amended Complaint.  Next, Defendant moves to dismiss pursuant to FED. R. CIV. P. 12(b)(1) all claims brought against him in his official capacity on sovereign immunity grounds.  Finally, Defendant York moves to dismiss on qualified immunity grounds any claims brought against him in his individual capacity.

### A.   Exhaustion.

Defendant York argues that Plaintiff has failed to exhaust his administrative remedies prior to filing his Amended Complaint.  Plaintiff's claims are governed by the Prison Litigation Reform Act ("PLRA"), which covers claims brought "with respect to

4

prison conditions under section 1983 of this title, *or any other federal law,* by a prisoner

confined in jail, prison, or other correctional facility." *See* **42 U.S.C. § 1997e(a)**

(emphasis added). This exhaustion requirement is mandatory. *See Porter v. Nussle,*

534 U.S. 516, 524 (2002).  PLRA requires inmates to exhaust "such administrative

remedies as are available prior to initiating suit over prison conditions.  "[F]ederal

prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures . . . . "

*Id.*; *see also Booth v. Churner,* 532 U.S. 731 741 (2001).  An inmate cannot file suit

and then cure his failure to exhaust while the suit is pending.  **42 U.S.C. § 1997e(a)**;

*Porter* 534 U.S. at 524.  When multiple claims are present in a single lawsuit, the PLRA

requires that *all available remedies be exhausted as to all claims*, or the complaint must

be dismissed.  *Ross v. County of Bernalillo,* 365 F.3d 1181, 1188-89 (10th Cir.

2004)(adopting the "total exhaustion" rule).

     The exhaustion provisions of **42 U.S.C. § 1997e(a)** are not jurisdictional.  *See*

*Steele v. Fed. Bureau of Prisons,* 355 F.3d 1204,1208-09 (10th Cir. 2003).  **§ 1997e(a)**

simply codifies the administrative exhaustion doctrine in order to "govern the timing of

federal-court decision making." *Id.,* 355 F.3d at 1208 -1209 (citing *McCarthy v.*

*Madigan,* 503 U.S. 140, 144(1992).  The provision " does not defeat federal-court

jurisdiction, it merely defers it. " *Id.* (citing *Thomas v. Woolum,* 337 F.3d 720, 730 (6th

Cir.2003) (internal quotations omitted)).

     As a consequence, a motion under **Fed.R.Civ.P. 12(b)(1)** is not an appropriate

avenue for questioning an inmate's exhaustion of administrative remedies because **Rule**

**12(b)(1)** is designed "for challenges to the court's subject- matter jurisdiction." ***Davis ex***

5

*rel. Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir.2003).  It does not apply to issues of exhaustion under PLRA.  *Steele,* 355 F.3d at 1208.  Therefore, a complaint "that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." *Id.* at 1210.  Accordingly, **Rule 12(b)(6)**[3] governs review of the issue of exhaustion, and Plaintiff must sufficiently plead or document the exhaustion of his administrative remedies with regard to all claims he seeks to bring before this court.

Plaintiff bears the burden of demonstrating exhaustion of administrative remedies for *all claims* against *all Defendants*.  *Id.; Steele v. Federal Bureau of Prisons,* 355 F.3d 1204, 1209-10 (10th Cir. 2003) (holding that there is no inequity of placing the burden of pleading exhaustion on the prisoner.).  An inmate cannot satisfy the PLRA's exhaustion requirement with a blanket statement that he has exhausted his remedies.  Rather, the Tenth Circuit requires an inmate to do as follows:

> (1) plead his claims with "a short and plain statement . . . showing that [he] is entitled to relief," in compliance with **FED. R. CIV. P. 8(a)(2);** and

> (2) "attach[ ] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome."  *Steele,* 355

---

[3] Generally, when viewing a **Rule 12(b)(6)** motion, the court may not consider evidence outside the pleadings unless it converts the motion to one for summary judgment under **Fed.R.Civ.P. 56**, with notice to the parties. *See Brown v. Zavaras,* 63 F.3d 967, 969 (10th Cir.1995). However, documents referred to in a complaint and central to its claims are not considered to be outside the pleadings. *See Prager v. LaFaver,* 180 F.3d 1185, 1188-89 (10th Cir.1999). The court is not required to consider them, but may do so in its discretion. *Id.*  In this case, the issue of exhaustion is central to the claims presented by the Plaintiff, and therefore, it is appropriate that the court consider any relevant documentation or information provided outside of the pleadings without converting the motion to one for summary judgment.

F.3d at 1210.

The Bureau of Prisons ("BOP") has essentially a four-tiered administrative procedure for inmate grievances, which is codified at **28 C.F.R. § 542.10 *et seq*.** The first step is informal resolution with the prison's staff. **28 C.F.R. § 542.13.** The next step is a written Administrative Remedy Request to the Warden. **28 C.F.R. § 542.14.** If the inmate feels the response is unsatisfactory, within 20 calendar days of the date the Warden signed the response, the inmate may then appeal the complaint to the Regional Director. **28 C.F.R. § 542.15(a).** If dissatisfied with the Regional Director's response, within 30 calendar days of the date the Regional Director signed the response, the inmate may then appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington, D.C. ***Id.*** Generally, an inmate has not exhausted his remedies until he has sought review at all levels. ***Id.*** However, "[i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director." **28 C.F.R. § 542.14.**

Plaintiff admits in his Amended Complaint that he did not exhaust all of his potential claims against Defendant York: "On 9/17/04, 11/9/04 & 11/19/04 *as well as on other occasions I did not challenge using admin (sic) remedies* Defendant J. York rejected outgoing letters. . . resulting in violations of 1st & 14th Amendment Rights." **Am. Compl., p. 4,** (emphasis added). However, those unexhausted claims do not appear to be at issue in this case. Rather, the crux of Plaintiff's claims deal with the specific, rejected letters mentioned in his Amended Complaint, which are dated September 16,

2004, November 5, 2004, and November 18, 2004.. As to those letters, Plaintiff claims that after each letter was rejected, he filed administrative appeals per BOP policy, but that all appeals were rejected by Defendant Hood.   Then, Plaintiff claims he filed Central Office Remedy Appeals with the Office of the General Counsel in Washington, D.C.,  on three separate occasions, which were dated December 9, 2004, January 24, 2005, and March 4, 2005.   Plaintiff has attached copies of these three appeals and their respective responses.  Upon further review of Plaintiff's attachments, Plaintiff has demonstrated that he has received review at the fourth and final level of review prior to filing his Amended Complaint with respect to *some* of his claims.

However, as Defendant York notes, Plaintiff has not demonstrated "total exhaustion" as to each claim brought against each Defendant.  First, Plaintiff's administrative appeals complained only of Defendant York, and not Defendant Hood. Yet, the Amended Complaint alleges that Defendant Hood failed to supervise.  That allegation is not contained in the administrative relief requested.

Second, Plaintiff's administrative appeals do not refer to his due process claim. Plaintiff's Central Office Administrative Remedy Appeal, dated December 9, 2004, states:  ". . .staff allowed the letter out after I was forced to remover derogatory remarks is censhorship (sic) in violation of 1st Amendment U.S. Constitution and Supreme Court decisions.  I want to mail the uncensored letter."  Plaintiff's second appeal, dated January 24, 2005, states:  "Prison officials may not censor inmate mail to eliminate unflattering or derogatory statements nor can they punish inmates who include such in their letter."  Plaintiff's third and final appeal, dated March 4, 2005, states: "Regional

Director is incorrect in stating disrespect in letters threatens security and orderly running of institution (sic) the U.S. Supreme Court has specifically rejected that argument. . . ."   Plaintiff's third appeal implies that his First Amendment rights were violated and that he should be able to freely express his opinions contained in his letters.

In his Amended Complaint, Plaintiff states the nature of his case as follows:

"[Defendant York] on 9/17/04, 11/9/04 & 11/19/04 violated my right to freedom of speach (sic) by refusing to mail letter he alleged were insolent towards government & prison employees violating my 1st Amendment rights as well as 14th Amendment Rights to Due Process. Ex-Warden Robert Hood rejected appeals filed asking I be allowed to mail the letters in questions.  He failed to properly supervise defendant J. York or provide him the training necessary to preform (sic) his duties as mail monitor causing the violation of my 1st & 14th Amendment rights.

Upon review of Plaintiff's attachments to his Amended Complaint, it appears that Plaintiff may have exhausted his First Amendment claim against Defendant York. However, Plaintiff does not mention his due process claim in any of his three administrative appeals.  Nor does he mention his failure to supervise claim with respect to Defendant Hood.   Had Plaintiff's Amended Complaint simply asserted a First Amendment claim against Defendant York, Plaintiff would have been able to demonstrate exhaustion through his pleadings and attached documentation.[4] In this case, however, Plaintiff has not presented well-pled facts or facts from which it can be inferred that he exhausted his administrative remedies as to each of his claims

---

[4] In fact, there is nothing precluding Plaintiff from seeking leave of the court to file a second amended complaint in which he asserts only a First Amendment claim against Defendant York.

against each of the Defendants.  Therefore, Plaintiff's showings are insufficient under *Steele*, and do not demonstrate total exhaustion.  Because Plaintiff does not properly plead exhaustion of all of his *Bivens* claims, the Amended Complaint must be dismissed in its entirety *without* prejudice under FED. R. CIV. P. 12(b)(6).  *See Ross,* 365 F.3d at 1188-89; *Steele,* 355 F.3d at 1210 (finding that a complaint that fails to alleged exhaustion is "tantamount to one that fails to state a claim upon which relief can be granted").

### B.   Sovereign Immunity for Claims against Defendant in Official Capacity.

Alternatively, Defendant York argues that Plaintiff's claims against him in his official capacity should be dismissed pursuant to FED. R. CIV. P. 12(b)(1).  Defendant York argues that any claim brought against him in his official capacity is barred by sovereign immunity, which is jurisdictional in nature.  *See F.D.I.C. v. Meyer,* 510 U.S. 471, 475 (1994).  Indeed, a constitutional tort action for monetary damages cannot be maintained against the United States or its employees in his official capacity if there is no waiver of sovereign immunity for constitutional violations.  *Meyer,* 510 U.S. at 483-86.  Plaintiff bears the burden of proof as to jurisdiction.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992); *Sac & Fox Nation of Okla. v. Cuomo,* 193 F.3d 1162, 1165 (10th Cir. 1999). Therefore,  Plaintiff bears the burden of showing that Defendant York in his official capacity waived sovereign immunity as to Plaintiff's constitutional claims.  *Fostvedt, v. United States,* 978 F.2d 1201, 1203 (10th Cir. 1992).

Defendant correctly argues that Plaintiff's constitutional claims for damages[5] against him in his official capacity are barred by sovereign immunity absent express statutory consent authorizing such relief. *FDIC v. Meyer,* 510 U.S. 471, 485 (1994) ("[T]he purpose of ***Bivens*** is to deter the officer ... if we were to imply a damages action directly against federal agencies, ... there would be no reason for aggrieved parties to bring damages actions against individual officers ... [T]he deterrent effects of the ***Bivens*** remedy would be lost."); *Farmer v. Perrill,* 275 F.3d 958, 963 (10th Cir.2001) ("There is no such animal as a ***Bivens*** suit against a public official tortfeasor in his or her official capacity.").

Plaintiff has not provided the court with any express or implied statutory language under which the United States has consented to be sued for the constitutional violations asserted by him. Therefore, to extent the court disagrees with the Magistrate Judge's recommendation to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6) for failure to exhaust, Plaintiff's damages claims against Defendant York in his official capacity should be dismissed for lack of jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).

### C. Qualified Immunity for Claims against Defendant in his Individual Capacity.

Finally, Defendant York claims that he is entitled to qualified immunity on any claim raised against him in his individual capacity. Government officials performing

---

[5] Plaintiff also seeks injunctive relief against Defendant York. However, Defendant does not argue that sovereign immunity bars Plaintiff's request for injunctive relief, but rather bars Plaintiff's damages claims. Defendant York states: "A constitutional tort ***for monetary damages*** cannot be maintained against the United States or its employees in his (sic) official capacity because there is no waiver of sovereign immunity for constitutional violations." **Mtn. to Dismiss, p. 11** (emphasis added).

11

discretionary functions, generally, are granted qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Layne,* 526 U.S. 603, 609 (1999).  The primary purpose of qualified immunity is "to protect public officials from undue interference with their duties and from potentially disabling threats of liability. . . . " *Elder v. Holloway,* 510 U.S. 510, 514 (1994).  Qualified immunity serves as a defense from lawsuits, not just liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985); *Seigert v. Gilley,* 500 U.S. 226, 232-33 (1991).

When the defense of qualified immunity is raised, "the plaintiff initially bears a heavy, two-part burden." *Reynolds v. Powell,* 370 F.3d 1028, 1030 (10th Cir. 2004). Plaintiff must demonstrate that : 1) the Defendant's actions violated a constitutional right; and 2) that the right allegedly violated was clearly established at the time of the conduct at issue. *Id.*  If no constitutional right was violated, it is unnecessary to determine if the right allegedly violated was clearly established. *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001).

### 1.    Plaintiff's First Amendment Claim.

Plaintiff cannot meet his burden to overcome the qualified immunity defense with respect to his First Amendment claim against Defendant York.   The Supreme Court has ruled that restrictions on outgoing inmate mail are justified if reasonably related to an important government interest. *Thornburgh v. Abbott,* 490 U.S. 401, 413-14 (1974).  In order to enforce permissible restrictions which are reasonably related to

12

substantial government interests, corrections officers must be able to inspect all

outgoing mail. ***Beville v. Ednie,*** 74 F.3d 210, 214 (10th Cir. 1996), ***Implied Overruling***

***on other grounds Recognized by  Tucker v. Graves***, 107 F.3d 881 (10th Cir. 1997).

However, prison officials may not punish inmates for statements made in letters to

outsiders that do no impinge on an important governmental interest.  As the Supreme

Court has stated, "[p]rison officials may not censor inmate correspondence simply to

eliminate unflattering or unwelcome opinions or factually inaccurate statements."

***Procunier v. Martinez,*** 416 U.S. 396, 413 (1974), ***overruled in part by Thornburgh,***

490 U.S. at 413-14 (distinguishing ***Martinez***, which dealt with outgoing versus incoming

prisoner mail).

Here, Plaintiff alleges that on three separate instances– September 17, 2004,

November 8, 2004, and November 19, 2004– his letters, dated September 16, 2004,

November 5, 2004, and November 18, 2004,  were rejected because they were insolent

towards BOP staff.  Plaintiff references, but does not attach, the three letters in

question in his Amended Complaint.   In the first letter, dated September 16, 2004,

which is attached to Defendant's Motion to Dismiss, Plaintiff refers to a BOP official as

an "ugly little lesbian who reads all my mail" and whose mother allegedly "moved to

Mexico and died giving head to a huge donkey in a live sex show, so she became a

man hating lesbian."  **Ex. A, Mtn. to Dis.**  In the second letter, dated November 5,

2004, and attached to his Response, Plaintiff writes: "so obviously these asshole

pieces of shit stole [a letter].  They try some pretty way out shit around here in regards

to my mail."  **Ex. D, Pl. Res.**  In the third and final letter at issue, dated November 18,

2004, and attached to his Response, Plaintiff writes to his brother Bob: "Still a lot a bullshit with mail, but when you got a bunch of lesbians spend all day lickin' each other rather than do their jobs, well shit just don't get done right.  Federal government employees, you know how they are!"  **Ex. E, Pl. Res.**

Defendant York argues that the letters were refused for mailing primarily because of insolent and derogatory statements made towards prison staff.  Plaintiff responds that his speech contained in the letters was merely unflattering or factually inaccurate.  And, even if the statements were indeed insolent, Defendant York should not have refused to mail the letters pursuant to ***Loggins v. Delo,*** 999 F.2d 364, 367 (8th Cir. 1993).  By doing so, Plaintiff claims, Defendant York violated his First Amendment rights.

In the First Amendment context, a prisoner retains his rights only to the extent that they are consistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.  ***Pell v. Procunier,*** 417 U.S. 817, 822 (1974).  The Supreme Court has ruled that restrictions on outgoing inmate mail are justified if reasonably related to an important government interest. ***Thornburgh***, 490 U.S. at 413-14; ***Martinez***, 416 U.S. at 412-14.  "Prison rules censoring a prisoner's personal outgoing mail are justified only if the regulation or practice in question furthers an important governmental interest of security, order, or rehabilitation, and the limitation of the prisoner's retained First Amendment rights must be no greater than is necessary to protect the governmental interests." ***Martinez,*** 416 U.S. at 413.  Where good cause is shown, therefore, a prisoner's outgoing mail can be read without violating the prisoner's

14

First Amendment rights. *Martinez*, 416 U.S. at 412-13 (a challenged regulation or practice is constitutional if it promotes "one or more of the substantial government interests of security, order and rehabilitation"); *Beville,* 74 F.3d at 214 ("In order to enforce permissible restrictions which are reasonably related to substantial government interests, corrections officers must be able to inspect all outgoing mail.").

The BOP regulations provide: "outgoing mail from a sentenced inmate in a medium or high security level institution, or administrative institution may not be sealed by the inmate and may be read and inspected by staff." *See C.F.R.* § **540.14(2)***.* These regulations implicate important penological interests.   Indeed, censorship of personal correspondence that include threats, blackmail, contraband, plots to escape, discuss criminal activities, or otherwise circumvent prison regulations, is essential to the protection of prison order and security. *Thornburgh*, 490 U.S. at 411-12 ("[d]angerous outgoing correspondence" in prison context can pose a "serious threat to prison order and security"); *Martinez*, 416 U.S. at 414 n. 14 (finding personal correspondence including material which contains contraband, or was used to conduct illegal activity and plots to escape, can be censored).

Further, the Eighth Circuit had held that epithets or personal abuse is not constitutionally protected speech in the prison/mail context. *Leonard v. Nix,* 55 F.3d 370 (8th Cir. 1995); *Smith v. Delo,* 995 F.2d 827, 832 (8th Cir. 1993).   "When a prisoner is not sending legitimate personal correspondence, defamatory comments that are directed at the warden and prison staff through the guise of jailhouse lawyer communication properly subject the prisoner to discipline to preserve the prison's

penological interest in order . . .that inmate's discipline does not violate the First Amendment." *Nix,* 55 F3d at 376.   However, mere disrespectful comments cannot be grounds for refusing to send a letter; the prisoner must direct his defamatory comments expressly to the warden and staff for purposes of making his feelings known *to them." Id.* at 375.

In this case, Plaintiff indicates in his first letter that he is aware that his mail is being read.  He then disparages the person reading his mail in that letter and in the subsequent letters.  Plaintiff's comments appear to be aimed directly at those reading/censoring his mail.   Here, particularly since Plaintiff was allowed to send his letters without the disparaging comments and any disciplinary action against him was dismissed, and because the BOP has a legitimate, penological interest in maintaining order through censorship of mail, Plaintiff is unable to show a First Amendment violation.  Therefore, Plaintiff cannot demonstrate that Defendant York's actions violated his First Amendment rights.  Because Plaintiff has failed to meet this heavy, two-part burden, Defendant York is shielded by qualified immunity from Plaintiff's First Amendment claim.

### 2.      Plaintiff's Due Process Claim.

Defendant York claims that qualified immunity shields him from liability related to Plaintiff's due process claim.  Plaintiff alleges that Defendant York has violated his Fourteenth Amendment rights.  Because Plaintiff's claim is directed at a federal employee, the Fifth Amendment, rather than the Fourteenth Amendment, applies in determining plaintiff's due process claims. *See Berry v. City of Muskogee,* 900 F.2d

16

1489, 1492 n. 2 (10th Cir.1990) (Fifth Amendment protects against deprivations of life, liberty or property by federal government). Based on plaintiff's *pro se* status, the allegations of a violation of his Fourteenth Amendment due process rights in his Amended Complaint should be, instead, construed as Fifth Amendment due process claims. Due process analysis is the same under both the Fifth and Fourteenth Amendments. *See Bolling v. Sharpe*, 347 U.S. 497 (1954).

Due process questions are examined in two steps. First, it must be determined whether the government has interfered with a life, liberty, or property interest. Second, if the government has interfered with such an interest, it must be determined whether the procedures which led to the deprivation were constitutionally sufficient. *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 459 (1989) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571).

Defendant York claims that Plaintiff "has not articulated what the loss of life, liberty or property is in his case."  Indeed, any alleged disciplinary sanction lodged against Plaintiff in response to his letter writing was dismissed, further undermining any loss of liberty claim.  Further, Plaintiff fails to articulate any property loss because his letter was returned to him and Plaintiff was allowed to resend it, minus the derogatory remarks. Thus, Plaintiff fails to raise an issue of constitutional magnitude and fails to establish a Fifth Amendment violation.  Because Plaintiff has not shown that Defendant's actions violated a constitutional right, qualified immunity shields Defendant in his individual capacity from liability with respect to this claim.

D.     **Defendant Hood.**

17

Pursuant to the August 17, 2005, Order [#15] granting service by United States Marshal, an agent of the U.S. Marshal attempted to serve copies of the summons and complaint on Defendant Hood at the address provided by Plaintiff.  An unexecuted Waiver of Summons and Complaint directed at Defendant Hood was filed with the court on September 6, 2005.  To date, Defendant Hood has not filed a signed waiver of service or appeared in te case.  Apparently, Defendant Hood is no longer employed at FCC, Florence, nor with the BOP.

FED. R. CIV. P. 4(m) provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of an action.  Defendant Hood has been named in this case since the filing of the Amended Complaint on August 8, 2005.  More than five months has passed since the filing of the Amended Complaint, and Defendant Hood has never been served with a summons and complaint in this action.

While an incarcerated *pro se* Plaintiff is entitled to rely on the U.S. Marshal for service, there is no indication in this case that the U.S. Marshal failed to perform the duty to serve Defendants.  The U.S. Marshal attempted to serve Defendant Hood at the location indicated by the Plaintiff.  The court need not require the U.S. Marshal's Office to serve Defendant Hood at his current address.  Sufficient time has been afforded for Plaintiff to serve Defendant Hood.  Therefore, Plaintiff is required to show cause why this civil action should not be dismissed against Defendant Hood pursuant to FED. R. CIV. P. 4(m) for failure to effect service and pursuant to D.C.COLO.LR 41.1 for failure to prosecute.

18

Accordingly,

**IT IS ORDERED:**

1.     **That on or before February 28, 2006, Plaintiff shall show cause in writing why this civil action should not be dismissed for failure to effect service and failure to prosecute as to Defendant Hood.**  In the event that no such showing is made, the court will issue a recommendation that this civil action be dismissed without prejudice as to Defendant Hood for failure to effect service and failure to prosecute.

Further,

**IT IS RECOMMENDED** as follows:

1.     That  Defendant York's Motion to Dismiss [#28], filed October 18, 2005, **BE GRANTED**;

2.     That Plaintiff's claims against Defendant York **BE DISMISSED WITHOUT PREJUDICE** for failure to demonstrate total exhaustion of all of his claims pursuant to **FED. R. CIV. P. 12(b)(6)**;

3.     That Defendant York **BE DROPPED** from this action; and

4.     That the above-referenced case caption **BE AMENDED** accordingly.

**IV.     Advisement to the Parties**.

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  **28 U.S.C. § 636(b)(1); FED. R. CIV. P.  72(b)**;  *In re Griego*, 64 F.3d 580,

583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. **28 U.S.C. § 636(b)(1)**. A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. **28 U.S.C. § 636(b)(1)**.

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Syss., Inc.*,

20

52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. U.S.*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, Plaintiffs waived their right to appeal the magistrate's ruling).

**DATED** at Denver, Colorado, this 14th day of February, 2006.

BY THE COURT:

*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge