IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-CV-01179-PSF-CBS

ROY ALLEN GREEN,

    Plaintiff,

v.

J. YORK, S.I.S. Technician, and
ROBERT HOOD, Ex-Warden,

    Defendants.

**ORDER ON MAGISTRATE JUDGE RECOMMENDATIONS OF
FEBRUARY 14, 2006 AND MARCH 6, 2006**

    This matter comes before the Court on the Recommendation of the Magistrate Judge dated February 14, 2006 (Dkt. # 49), in which he recommended that Defendant York's Motion to Dismiss (Dkt. # 28) be granted under Rule 12(b)(6), F.R.Civ.P. due to plaintiff's failure to demonstrate total exhaustion of administrative remedies, or alternatively under Rule 12(b)(1), F.R.Civ.P., for lack of jurisdiction based on Defendant's York's assertion of qualified immunity (Recommendation at 19). The Magistrate Judge also directed plaintiff to show cause in writing no later than February 28, 2006, why his claims against Defendant Hood should not be dismissed pursuant to Rule 4(m), F.R.Civ.P. for failure to make service of process on Defendant Hood within 120 days of the filing of the Amended Complaint.

    Thirty days have elapsed since the recommendation was filed, and plaintiff has not filed any objection to the recommendation, nor has he responded to the show cause

order issued by the Magistrate Judge. Moreover, on March 8, 2006, the Magistrate Judge entered a further recommendation that the claims against Defendant Hood be dismissed without prejudice for failure to comply with Rule 4(m), F.R.Civ.P. (Dkt. # 53).

As the Magistrate Judge correctly stated, plaintiff's *pro se* amended complaint filed August 8, 2005 asserts two claims for relief arising out of events that allegedly occurred on or about September 17, 2004, November 9, 2004 and November 19, 2004, when prison officials at the federal institution at ADX Florence refused to send outgoing mail from plaintiff because the letters contained material deemed insolent and derogatory towards prison staff and government employees. Apparently, the letters were later allowed to be sent after the derogatory material was removed (Attachment to Amended Complaint at 7).

Plaintiff's complaint alleges the refusal to send his letters without censorship violated his rights under the First Amendment and Fourteenth Amendment (Amended Complaint at 4). The Magistrate Judge liberally construed plaintiff's Fourteenth Amendment claim as a Fifth Amendment claim, because it was asserted against federal rather than state officials. In essence, plaintiff claims his free speech and due process rights were violated. The only defendants named in the Amended Complaint are Defendants J. York and Robert Hood. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and a jury trial (Amended Complaint at 6).

**CLAIMS AGAINST DEFENDANT HOOD**

As the Magistrate Judge correctly found, plaintiff obtained an order from this Court directing the U.S. Marshal to attempt service on Defendant Hood at the address

provided by plaintiff (Dkt. # 15).  Defendant Hood, the former warden at Florence, is apparently no longer an employee of the institution at Florence, or of the U.S. Bureau of Prisons (*see* Dkt. # 20), and service has not been effected upon him.[1]  Plaintiff has not provided an alternative address, or made any other effort to effect service upon Defendant Hood.  As more than 120 days have elapsed since the filing of the Amended Complaint, and no service has been effected, nor has plaintiff made any showing in response to the order of the Magistrate Judge to show good cause why service has not been effected, the claims against Defendant Hood are DISMISSED without prejudice pursuant to Rule 4(m), F.R.Civ.P.

**CLAIMS AGAINST DEFENDANT YORK**

Defendant York moved to dismiss the claims against him on the grounds that plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act of 1995 (the "PLRA"), 42 U.S.C. § 1997e(a), and alternatively because the Amended Complaint failed to state a claim for relief against him (Dkt. # 28).

As the Magistrate Judge correctly found, a plaintiff must demonstrate exhaustion of administrative remedies by attaching administrative dispositions to the complaint. *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1210 (10th Cir. 2003), *cert.*

---

[1] The Court notes that docket entry 16 on CM/ECF in this case is described as a return of service on Defendant Hood, but upon viewing the document it appears that it is rather a document by a *pro se* litigant from another case that was erroneously filed in the instant case (*see* Dkt. # 22). The document that apparently should have been entered as docket entry 16 now appears as docket entry 54.  However, it is merely an acknowledgment by the U.S. Attorney's Office of receipt of documents and not an acceptance of service upon Defendant Hood.

*denied*, 543 U.S. 925 (2004).  Plaintiff did attach a number of documents to his Amended Complaint, but it is difficult to decipher which documents relate to which grievance plaintiff was alleging, in part because of the poor quality of the copies.  The Magistrate Judge found that it appeared plaintiff may have exhausted his administrative remedies as to his alleged First Amendment claim against Defendant York, but did not administratively exhaust his claims with respect to the alleged due process violation (Recommendation at 9).  Applying what is referred to as the rule of total exhaustion as set forth in *Ross v. County of Bernalillo,* 365 F.3d 1181, 1188-89 (10th Cir. 2004), the Magistrate Judge concluded that all of plaintiff's claims against Defendant York were subject to dismissal without prejudice (Recommendation at 10).  The Magistrate Judge did note, however, that plaintiff could correct the situation by seeking leave of the court to amend his complaint to assert only the First Amendment claims (Recommendation at 9, n.4).  Plaintiff has not done so.

In the alternative, the Magistrate Judge found that plaintiff's claims against Defendant York in his official capacity were barred by the doctrine of sovereign immunity (Recommendation at 10-11) and plaintiff's claims against Defendant York in his individual capacity by the doctrine of qualified immunity (Recommendation at 11-17).

Despite the lack of an objection from plaintiff to the Recommendation of the Magistrate Judge, but due to the lack of clarity in plaintiff's pleadings, this Court has reviewed the various documents submitted by plaintiff as they relate to his efforts to exhaust administrative remedies.  Plaintiff's first administrative appeal appears to be

4

contained at page 7 of the attachments to his Amended Complaint.  Although nearly illegible, it appears to have been filed on December 14, 2004 and complains of an incident report filed against him on September 20, 2004, apparently relating to his efforts to send a letter, and states that "As I alledge [sic] that staff allowed the letter out after I was forced to remove derogatory remarks is censorship in violation of 1st Amendment U.S. Constitution & Supreme Court decisions."  This administrative grievance does assert a First Amendment violation but does not appear to allege any due process violation.

Plaintiff's next administrative appeal, dated January 24, 2005, appears at pages 9 and 10 of the Amended Complaint, and asserts that "[p]rison officials may not censor inmate mail to eliminate unflattering or derogatory statements nor can they punish inmates who include such in their letter, this is well established law," citing to three court decisions (Amended Complaint at 10).  There is no issue in this case regarding punishment of plaintiff, for as the Magistrate Judge found the discipline was expunged by the Unit Discipline Committee (Recommendation at 3).  This Court agrees that this administrative grievance does not raise a due process claim.  There is no mention of due process in the grievance, and a review of the cases cited by plaintiff indicates that each involved the First Amendment rights of inmates, not due process rights.

Plaintiff's next grievance, dated March 4, 2005, appears at page 12 of the Amended Complaint.  It primarily incorporates his prior administrative grievances, argues that the asserted reasons for the censorship of his letters was "specifically rejected" in three court decisions which he cites, two of which he previously cited.

5

The third case cited by plaintiff addresses whether particular prison censorship rules violated the First Amendment. Again, this administrative grievance does not appear to allege any due process violations.

Accordingly, this Court agrees with the conclusion of the Magistrate Judge that plaintiff did not satisfy the requirement to exhaust his administrative remedies regarding his claim of violation of due process. As stated in *Ross v. County of Bernalillo*, *supra*, "[w]e agree the PLRA contains a total exhaustion requirement, and hold that the presence of unexhausted claims in Ross' complaint required the district court to dismiss his action in its entirety without prejudice." 365 F.3d at 1189. Pursuant to *Ross*, the same result would be is mandated here.

However, the Court also agrees that notwithstanding the rule of total exhaustion, plaintiff could resolve this issue by seeking to file a further amended complaint and proceed solely on his exhausted First Amendment claims. *See Dawson v. Taylor*, 128 Fed. Appx. 677, 679 (10th Cir., April 7, 2005). Plaintiff here has had the opportunity to seek to amend his complaint, as the Magistrate Judge suggested, but to date he has not done so. Perhaps, however, that is due to the Recommendation of the Magistrate Judge that even his First Amendment claim is subject to dismissal under Rule 12(b)(6), F.R.Civ.P. (Recommendation at 6-11).

With respect to those reasons, this Court agrees with the Magistrate Judge that plaintiff's damage claims against Defendant York, to the extent they purport to be brought against him in his official capacity, must be dismissed for the reasons set forth in the Recommendation (Recommendation at 11). Any claims against Defendant York

in his official capacity for damages are barred by the doctrine of sovereign immunity. As the Magistrate Judge found, Defendant York does not seek to dismiss the plaintiff's request for injunctive relief against him on the grounds of sovereign immunity, and that claim remains in the case.

With respect to the First Amendment claim brought against Defendant York in his personal capacity, however, the issue is whether qualified immunity protects him in light of the conduct alleged here. The Magistrate Judge found that qualified immunity protected Defendant York as the conduct alleged by plaintiff did not violate a constitutional right clearly established at the time of the conduct at issue (Recommendation at 12). In reaching this conclusion, the Magistrate Judge recognized (Recommendation at 13) that although prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements, citing to *Procunier v. Martinez*, 416 U.S. 396, 413 (1974) *overruled in part by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989) (limiting *Martinez* to outgoing mail), correspon-dence could be subject to censorship if it posed a threat to prison order and security, citing to *Thornburgh, supra*, 490 U.S. at 411-12 and *Martinez, supra,* 416 U.S. at 414, n.14. (Recommendation at 15). Here, the Magistrate Judge found that plaintiff's letters did pose a threat to prison security, for while the letters are purportedly addressed to his brother, they contain derogatory comments aimed at prison officials whom plaintiff is well aware are reading his outgoing mail. Citing to *Leonard v. Nix,* 55 F.3d 370 (8th Cir. 1995) and *Smith v. Delo*, 995 F.2d 827 (8th Cir. 1993), the Magistrate Judge found that plaintiff's actions here were tantamount

7

to directing his defamatory comments expressly to the warden and prison officials, and such conduct is not protected by the First Amendment as it threatens prison security (Recommendation at 15-16).

This Court has carefully considered the cases cited by the Magistrate Judge and Defendant York in his motion to dismiss.  Certainly *Procunier v. Martinez, supra,* states that censorship of prisoner mail is justified if certain criteria are met.  416 U.S. at 413.  The criteria enumerated in that decision include that the practice must further an important or substantial government interest unrelated to the suppression of expression.  In addition "[p]rison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation." *Id.*

When these criteria are met, the prison's limitation of the inmate's First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.  The Supreme Court went on to say:

> Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.  This does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter.  Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an

> administrator's duty. But any regulation or practice that restricts inmate correspondence must be generally necessary to protect one or more of the legitimate governmental interests identified above.

*Id.* at 413-14.

In *Thornburgh v. Abbott*, the Supreme Court clarified that the *Martinez* restrictions regarding censorship were to be applied in the context of outgoing prisoner mail, as the "implications for security are far more predictable. Dangerous outgoing correspondence is more likely to fall within readily identifiable categories: examples noted in *Martinez* include "escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion." 490 U.S. at 411-12. Relying on this language, the Tenth Circuit panel in *Beville v. Ednie*, 74 F.3d 210 (10th Cir. 1996), upheld a prison practice of screening outgoing mail. However, the panel specifically stated that the inmate's "outgoing mail was examined, not censored." 74 F.3d at 214.

Similarly, in *Leonard v. Nix*, *supra*, the Eighth Circuit not only upheld screening the inmate's mail, but also upheld disciplinary actions taken against due to the content of the outgoing letters which were found to contain vulgar, obscene and racist epithets against the warden of the prison, and which resulted in "justifiable disciplinary action to preserve discipline and order." 55 F.3d at 375. The Magistrate Judge here is correct in stating that the court in *Nix* upheld a finding that the inmate's outgoing letters were not genuine, personal outgoing mail, but rather were diatribes directed at the warden and prison staff, whom the inmate knew would be reading his outgoing mail. 55 F.3d at 374. Thus the *Nix* opinion concluded that "when a prisoner is not sending legitimate

personal correspondence, defamatory comments that are directed at the warden and prison staff through the guise of a jailhouse lawyer communication properly subject the prisoner to discipline to preserve the prison's penological interest in order, and that Leonard's [the inmate's] discipline does not violate the First Amendment." 55 F. 3d at 376.

However, the issue presented in *Nix* was whether the inmate could be subject to discipline. No case cited by Defendant York, or any case referenced in the Recommendation of the Magistrate Judge, upholds censorship of the outgoing mail on the basis that the material is scurrilous, insolent or derogatory, as opposed to the imposition of discipline. In the instant case, as noted above, imposition of punishment is not the issue.

As the Supreme Court stated in *Martinez*, prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must demonstrate that the censorship furthers an important or substantial government interest in security, order or rehabilitation. 416 U.S. at 413. The question then is whether Defendant York has met the burden of showing such an "important or substantial government interest."

In its effort to answer this question in the context of a disciplinary matter, the Eighth Circuit in *Nix* reviewed and summarized the contents of the inmate's two letters, and as noted above found them to contain vulgar, obscene and racist epithets against the warden of the prison, some of which are set forth in the opinion but need not be repeated here. In the instant case, the Magistrate Judge referenced three letters from

the plaintiff, but in fact only one letter was attached to the Amended Complaint and only one letter is quoted in the Recommendation of the Magistrate Judge.  That letter, attached as Exhibit A to plaintiff's original complaint, is addressed to "Bob" (apparently plaintiff's brother) and consists of two hand-written pages. The two sentences quoted in the Recommendation of the Magistrate Judge, which the Court will not repeat here, are certainly offensive and insulting to the referenced prison employee, but that employee is not identified by name and the scurrilous comments can best be described as farcical or bizarre.  Moreover, the insults were made in the context of the plaintiff complaining about not receiving a photograph that was mailed to him, and appear to reflect a venting of frustration rather than the racially inflammatory diatribe that was the subject in *Nix*.

Indeed, the Court finds that the instant case is more like the situation in *McNamara v. Moody*, 606 F.2d 621 (5th Cir. 1979), *cert. denied,* 447 U.S. 929 (1980), in which the panel upheld a judgment for an inmate alleging violation of his First Amendment rights due to censorship of his outgoing mail addressed to his girlfriend. In *McNamara*, the inmate's two-page letter dealt in large part with the inmate's discontent with the prison mail censorship system, similar to the situation in the instant case, but it also charged that the mail censoring officer, while reading mail, engaged in masturbation and "had sex" with a cat, not unlike plaintiff's insults in his September 16, 2004 letter.  606 F.2d at 623 and n.2.  The district court granted the inmate injunctive relief, nominal damages and attorneys' fees.  Similarly, in *Loggins v. Delo*, 999 F.2d 364, 367 (8th Cir. 1993) the court upheld a judgment that an inmate's First Amendment

11

rights were violated when he was disciplined for writing a letter to his brother stating "there's a beetled eye'd bit-- back here who enjoys reading people's mail," going on to explain that the "bit-- " was a "dyke" and "[w]as hoping to read a letter someone wrote to their wife talking dirty sh-- so she could go in the bathroom and masturbate." Those statements were held not to sufficiently implicate prison interests in security to overcome inmate's First Amendment and permit discipline of inmate. *See also Bressman v. Farrier*, 825 F. Supp 231, 233 (N.D. Iowa 1993) (inmate's letter to his brother stating that "yeah, their [sic] real assholes, my counselor is a dick head, the officers working here are punks, the ladies in the mail room are bitches, now I hope they all read this letter and get their kicks off of it" did not justify discipline of inmate); and *Osterback v. Ingram*, 2000 WL 297840 at *4 (N.D. Fla. 2000) (among other "vulgar and offensive" comments in an inmate's letters, "that mail room bitch has a hard-on for me . . . Frieda the fascist" is protected by the First Amendment).

As in these similar cases, this Court here can not say that Defendant York has established that his act of censorship furthered a "substantial government interest" in prison security, order or rehabilitation. As in *Bressman*, "[t]he risk of a security breach or breakdown of discipline [due to the offending statements] is virtually nonexistent." 825 F. Supp. at 234. Although obnoxious, offensive and perhaps disciplinable, Defendant York has not demonstrated as a matter of law that these particular remarks written by plaintiff to his brother justified censorship. Thus, this Court does not accept the Recommendation of the Magistrate Judge insofar as it recommends dismissal of

plaintiff's First Amendment claim against Defendant York on the basis of qualified immunity under Rule 12(b)(1), F.R.Civ.P.

**CONCLUSION**

For the reasons set forth above, plaintiff's claims against Defendant Hood are DISMISSED without prejudice for failure to make service in accordance with Rule 4(m), F.R.Civ.P.

Defendant York's Motion to Dismiss (Dkt # 28) is GRANTED in part and DENIED in part.  Plaintiff's claim against Defendant York alleging deprivation of due process rights under the Fourteenth or Fifth Amendments is DISMISSED without prejudice for failure to exhaust administrative remedies.  Plaintiff's damages claims against Defendant York, to the extent they purport to be brought against him in his official capacity, are DISMISSED with prejudice.

Plaintiff's claim against Defendant York alleging deprivation of plaintiff's First Amendment rights is subject to dismissal for failure to totally exhaust his administrative remedies as to all claims.  However, the Court will defer dismissing that claim for 20 days, or until April 5, 2006, to allow plaintiff time to file a third amended complaint alleging only the First Amendment claim, or otherwise notify the Court that he wishes to proceed only on the First Amendment claim.

If plaintiff does not make such a filing by April 5, 2006, the remaining claim against Defendant York will be dismissed without prejudice pursuant to the doctrine of total exhaustion.

DATED:  March 16, 2005

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge